UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| Robert Younger, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Molson Coors Beverage Company,<br><br>Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Molson Coors Beverage Company ("Defendant") manufactures "Ranch Water Hard Seltzer," containing "100% Agave & Real Lime Juice" with pictures of the agave plant, the source crop for tequila, described as "Spiked Sparkling Water" under the Topo Chico brand ("Product").




I.  **ORIGINS OF RANCH WATER**

2. Ranch water likely originated in the 1960s in the blazing sun on West Texas ranches where cowboys worked long days.

3. This drink "is a simple cocktail that's a mix of 100-percent agave tequila, fresh lime juice and Topo Chico sparkling water, served over ice.[1]



4. According to legend, ranch hands would begin the day with a thermos full of ice,

---

[1] Caroline Stanko, What Is Ranch Water?, Taste of Home, Sept. 1, 2022.

Topo Chico mineral water and a splash of tequila.

5. After lunch, they would add lime, a staple of their Tex-Mex cuisine, resulting in the tartness ranch water has become known for.

6. Ranch water's popularity has spread beyond West Texas for numerous reasons.

7. First, its limited and simple ingredients are consistent with consumer avoidance of beverages with synthetic components in favor of what they can make at their backyard parties.

8. Second, ranch water is not highly processed through complicated machinery, and made by pouring tequila, lime juice and Topo Chico sparkling water over ice, a formula that works even for canned and ready-to-drink ("RTD") versions.

9. This means RTD ranch waters can and should be similar to those made and served at authentic Texas icehouses, open-air dive bars where Texans go to cool off.

10. This is shown through the ranch water sold by competitors such as Ranch Rider, described truthfully as containing "Only Reposado Tequila, Sparkling Water & Real Lime."



11. Third, tequila, based on the agave plant, is "the fastest-growing spirits category,"

3

resulting in its use in numerous canned beverages.

12. Fourth, ranch water fits into the trend of "better for you" alcoholic drinks which are based on alcohol but contain natural and simple ingredients including fruit.

13. Fifth, novel technologies and regulatory adjustments have resulted in a boom of "canned cocktails," which are alcoholic beverages containing spirt ingredients instead of having a base of malt liquor or beer based on sugar or barley.

## II.   NOT JUST ANY TEQUILA IS ESSENTIAL TO RANCH WATER

14. Tequila is based on the blue agave plant, a type of succulent with large leaves ending in pointy tips, native to regions of the Americas.[2]




15. Federal and identical state law define tequila as "An agave spirit" that "must be made in Mexico, in compliance with [its] laws and regulations [] governing the manufacture of Tequila for consumption in that country." 27 C.F.R. § 5.148(b)(1)

16. The Norma Oficial Mexicana ("NOM"), which contains the tequila standards,

---

[2] A succulent plant is one that retains water in its leaves in dry climates.

4

requires a distilled spirit labeled as "Tequila" to contain not less than 51% blue agave sugars, prior to fermentation.[3]

17. Where the other 49% of the sugars are not from blue agave but molasses, corn syrup and/or cane sugar, the product is colloquially referred to as a "Mixto Tequila" or "Tequila."

18. However, "Tequilas that are 100% agave tequilas are only made from Blue Weber agave sugars" and are prominently identified on their labeling as "100% agave tequila."[4]

19. According to industry experts, "[T]he lack of added sugar is precisely what makes 100% agave tequila a better choice" because it means "you feel clear-headed when you wake up and ready to take on the day," compared to when the sugars are from non-agave sources, due to the makeup of the blue agave plant.

20. To help the public distinguish premium 100% agave tequila from "mixto tequila," the tequila industry cautions consumers to "check the label and make sure it says '100% de Agave' or '100% Puro Agave' to ensure [they] are drinking pure, unadulterated tequila just as it should be," because "if they don't state '100% agave' on the label," it means it is a lower quality "Mixto Tequila."[5]

21. Though "Tequila is the only choice for true Ranch Water" because "it only has about 69 calories per ounce and no carbohydrates [and is] [] low in sugar, making this a much healthier option for many people," it is important to use a particular type of this distilled spirit.[6]

22. According to ranch water enthusiasts, this drink should be made with "a mid-range

---

[3] NOM-006-SCFI-2005, Alcoholic Beverages – Tequila – Specifications.
[4] Tequila 101: Mixto Tequila vs. 100% Agave Tequila, Inspiro Tequila, Oct. 29, 2021.
[5] Sip Tequila, 100% Agave vs. Mixto Tequilas.
[6] Dan Myers, If Your Tequila Isn't 100 Percent Blue Agave, It's Not Worth Drinking, The Daily Meal, May 26, 2017.

5

100% agave tequila as it will have the crispest, purest tequila flavor."[7]

23. This is affirmed by a noted cocktail expert who emphasizes "[using] 100% agave tequila Blanco [because] [T]here [is] no substitute[s] for th[is] ingredient[s]."[8]

24. While "[Y]ou do not need a top-shelf or high-priced tequila for ranch water" "[because] any tequila will do in a pinch," "It is best to use 100% agave tequila when making a Texas ranch water cocktail."[9]

25. The unofficial compendium of San Antonio tourism recommends using "a decent, 100% agave tequila."[10]

26. Another leading food website describes ranch water as "a simple cocktail that's a mix of 100-percent agave tequila, fresh lime juice and Topo Chico sparkling water, served over ice."[11]

27. One reason why ranch water is made with "100% agave tequila [is because it] has a very low sugar content," which is consistent with how this drink eschews sweetening ingredients.[12]

28. Since this drink was consumed by ranch hands during long summer days in West Texas, "Low sugar mean[t] better [or less severe] hangovers" to enable them to rise early the following morning with their cattle.

**III. TOPO CHICO BRAND FURTHERS EXPECTATION OF TEQUILA**

29. In addition to labeling the Product as containing "100% agave," the Topo Chico

---

[7] Colleen Graham, Ranch Water Recipe, The Spruce Eats, Mar. 28, 2022.
[8] Angela McArthur, Texas Ranch Water, The Short Order Cook, Nov. 4, 2021.
[9] *Id.*
[10] Staff, Ranch Water Recipe: The Official Summer Drink of West Texas, San Antonio Things To Do, July 10, 2020
[11] Caroline Stanko, What Is Ranch Water?, Taste of Home, Sept. 1, 2022.
[12] Spindrift paloma and Ranch Water: My favorite Tequila Cocktail Recipes, CleanRoutine, Aug. 9, 2022.

brand's reputation as a "key ingredient" in ranch water furthers the expectation it will contain tequila.[13]

30. The official Wikipedia page for Topo Chico, presumably monitored by that company, defines "Ranch Water [a]s a cocktail made with tequila, lime juice and Topo-Chico, over ice."[14]

31. Topo Chico is believed to be rich in essential minerals including calcium, sodium and zinc, owing to the volcanic soil at the Cerro del Topo Chico spring in Monterrey, Mexico.

32. Ranch water's oral history attributes this beverage's importance to the ranching industry in part because of its mineral content, which helped stave off dehydration in the West Texas sun.

IV.   **EXPECTATION OF NO SWEETENERS**

33. According to the founder of one brand of ranch water, its lack of a sweetener dovetails with consumers' "shift[ing] away from sugary, high-calorie cocktails."

34. Authentic formulations avoid adding sweeteners because ranch water was created as a light alcoholic beverage that facilitated productive activity in the fields.

35. In contrast, consumption of added sugars leads to spikes in blood sugar as the body must process this quickly, resulting in the "crash" feelings where one feels sluggish for several hours afterwards.

V.   **MISLEADING BECAUSE IT LACKS TEQUILA AND ADDS SUGAR**

36. The description as "Ranch Water" with "100% Agave & Lime" misleads consumers to expect it will contain tequila made from "100% Agave" instead of lower quality "Mixto

---

[13] Kelly Anthony, Ranch Water, The Anthony Kitchen, May 5, 2020.
[14] Wikipedia, Topo Chico.

7

Tequila."

37. However, the fine print ingredient list reveals the only agave-based ingredient is "Agave Syrup," a sweetener similar to sugar.

**INGREDIENTS:** FILTERED CARBONATED WATER, ALCOHOL, LIME JUICE FROM CONCENTRATE, NATURAL FLAVORS, AGAVE SYRUP, SODIUM CITRATE, CITRIC ACID, MAGNESIUM CHLORIDE*, SALT*, POTASSIUM CHLORIDE*. (MINERALS FOR TASTE)

38. Even if purchasers read the ingredient list, they will be misled because it lists only "Alcohol" instead of truthfully identifying its source as not tequila from the agave plant but simple sugar, such as "Alcohol (from fermented sugar)."

39. In the context of ranch water, where a consumer's first association is tequila, "100% Agave" tells them it will contain this type of tequila, instead of lower quality "Mixto Tequila."

40. No brand of agave syrup is advertised as "100% Agave" because this phrase would have no meaning to them.

41. That is because agave syrup by definition contains only agave, while tequilas are categorized based on their percentage of agave, with "100% agave" reserved for the premium and higher quality varieties, used in ranch water.

42. Defendant "do[es] nothing to dissuade the consumer from assuming that there's actual tequila in their drink, and [] actually appear[s] to be reinforcing the deception with their choices in marketing language" such as "100% Agave & Real Lime Juice."

43. Paste Magazine noted that "'100% [] agave' [] is [] a clever turn of phrase [because] tequila is a product of 100% agave," but that this "presumably refer[s] to the fact that the Product

8

also contains agave nectar for sweetening."

44. Not only is "100% Agave" misleading because it makes consumers expect a certain type of tequila, it is also deceptive because this type of agave ingredient is no different than added sugars, which are not a part of ranch water.

45. The labeling is misleading because even though the Product is sold under the Topo Chico brand, it lacks the "excessive bubbliness" and high, natural mineral content of Topo Chico mineral water.

46. This is shown by the first ingredient of "Filtered Carbonated Water," because if the Product used Topo Chico's mineral water the first ingredient would be "Mineral Water."

47. Additionally, while Topo Chico's mineral water contains significant amounts of naturally occurring essential minerals, the ingredients reveal that "Magnesium Chloride*, Salt* [and] Potassium Chloride*" are not from the water source, but added separately "for taste."

## VI. MISLEADING BY FAILING TO DISCLOSE IT IS A FLAVORED BEER

48. Federal and identical state regulations protect consumers against false and misleading statements on alcoholic beverages by requiring a label to provide basic information about the type of drink they are buying.

49. The Product's labeling as a "hard seltzer" and "spiked fails to comply with these regulations because it is required to tell consumers what they are buying is a malt beverage and best characterized as a flavored beer. 27 C.F.R. § 7.63(a)(2); 27 C.F.R. § 7.141(a); 27 C.F.R. § 7.147(b)(1).

50. That "hard seltzer" and "spiked sparkling water" "DO NOT meet th[ese] requirement[s] and may only be used in addition to legally authorized terms such as "malt beverage, beer, ale, porter, stout, etc." was confirmed by the Alcohol and Tobacco Tax and Trade

9

Bureau ("TTB").[15]

51. "Hard seltzer" and "spiked sparkling water" have no commonly recognized or mandated definitions.

52. The Product's description as "Spiked Sparkling Water" exploits consumers' understanding of "drink spiking," when someone puts alcohol into a non-alcoholic drink or adds extra alcohol to an alcoholic drink.[16]

53. Since the purpose of drink spiking is malicious and to render another person intoxicated, the added alcohol is typically from distilled spirits, because they are more concentrated and potent.

54. Despite "the hard seltzer boom … many consumers still don't understand, or care to understand" that products sold as "hard seltzer" typically "make use of alcohol created by fermentation, rather than blending in small amounts of distilled spirits with sparkling water."[17]

55. This is confirmed by focus groups organized by Defendant and/or other major sellers of malt-based beverages.

56. This confusion owes in part to how some products marketed as "hard seltzer" contain distilled spirits, while others are brewed like beer from bases of malted barley, sugar or other malt substitutes.[18]

57. In the absence of common understanding of these terms, many consumers expect products labeled as hard seltzer to contain distilled spirits.

---

[15] Paula Landsberger, TTB Senior Labeling Specialist, TTB Bootcamp: Labeling, Craft Brewers Conference & BrewExpo America, Sept. 2021.

[16] Nicole Lee and Jarryd Bartle, What is drink spiking? How can you know if it's happened to you, and how can it be prevented?, The Conversation, May 19, 2021.

[17] Jim Vorel, Hard Seltzer and "Ranch Water" are a Perfect Combination ... for Deception, Sept. 21, 2021.

[18] Tim McKirdy, The Ultimate Buyer's Guide to Hard Seltzer, VinePair, May 22, 2020.

10

58. Alcohol.org, an authority on how consumers understand labeling of alcoholic beverages, noted that "In practical terms, the term hard liquor refers to an alcoholic beverage that is produced through [] distillation" to produce distilled spirits, such as tequila, rum, gin and vodka.[19]

59. The distillation increases the proportion of alcohol content, which is why such drinks are considered "harder" than non-distilled alcoholic beverages like beer and wine, made through fermentation.[20]

60. According to Paste Magazine, "spreading the concept of ranch water to the masses, [through] hard seltzer[s] with the words 'ranch water' slapped across [it]" is "inherent deception."

61. This is because the Product does not contain alcohol from the agave plant but "alcohol from sugar."

## Jurisdiction and Venue

62. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

63. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

64. Plaintiff is a citizen of Florida.

65. Defendant is a Delaware corporation with a principal place of business in Illinois.

66. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

67. The members of the class Plaintiff seeks to represent are more than 100, because the

---

[19] Editorial Staff, Types of Hard Liquor, Alcohol.org, Oct. 25, 2022.
[20] Wikipedia, Liquor.

Product has been sold with the representations described here from thousands of stores and over the internet, in the States Plaintiff seeks to represent.

68. Venue is in this District with assignment to the Fort Myers Division because Plaintiff resides in Charlotte County and a substantial part of the events or omissions giving rise to these claims occurred in Charlotte County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

**Parties**

69. Plaintiff Robert Younger is a citizen of Punta Gorda, Charlotte County, Florida.

70. Defendant Molson Coors Beverage Company is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

71. As a result of the false and misleading representations of its ranch water as including "100% Agave" with pictures of agave under the Topo Chico brand, the Product is sold at a premium price, approximately no less than $18.99 for a twelve-pack of 12 oz cans, excluding tax and sales.

72. The Product's price is similar to other ranch water beverages which contain tequila only from the agave plant without added sugar ingredients.

73. Plaintiff purchased the Product at locations including but not necessarily limited to Tom's Discount and/or Publix in Punta Gorda, Florida, between 2022 and May 2023, and/or among other times.

74. Plaintiff read "Ranch Water," "Hard Seltzer," "Spiked Sparkling Water," and "100% Agave & Real Lime Juice" and saw the pictures of the agave plants.

75. Plaintiff knew that agave was the source of tequila.

76. Plaintiff expected "100% Agave" meant the Product contained tequila that was

12

entirely from agave, because otherwise there would have been no need to emphasize the "100%."

77. Plaintiff bought the Product at or exceeding the above-referenced price.

78. Plaintiff paid more for the Product than he would have had he known the above-referenced facts or would not have purchased it.

79. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

80. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

81. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

82. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other brands of ranch water, because he is unsure whether those representations are truthful.

83. If Defendant's ranch water were to be labeled truthfully, Plaintiff could rely on the labeling of other alcoholic beverages labeled as ranch water to expect they contained the ingredients expected from this drink.

## Class Allegations

84. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Louisiana and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

85. Common questions of issues, law, and fact predominate and include whether

13

Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

86. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

87. Plaintiff is an adequate representative because his interests do not conflict with other members.

88. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

89. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

90. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

91. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Causes of Action

### Count I

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* (Florida Class)

92. Plaintiff incorporates by reference preceding paragraphs 1-61.

93. Plaintiff saw and relied on the label's statements and pictures to expect the Product (1) contained tequila because "100% Agave" refers to a type of tequila, (2) contained Topo Chico mineral water, because this is inextricably linked with ranch water and the Product is sold under the Topo Chico brand and (3) did not contain added sugar ingredients because these are inconsistent with the light, non-sweet taste of ranch water.

94. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Count II

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

95. The Plaintiff incorporates by reference preceding paragraphs 1-61.

96. Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

97. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

98. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Count III

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

99. Plaintiff incorporates by reference preceding paragraphs 1-61.

100. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it (1) contained tequila because "100% Agave" refers to a type of tequila, (2) contained Topo Chico mineral water, because this is inextricably linked with ranch water and the Product is sold under the Topo Chico brand and (3) did not contain added sugar ingredients because these are inconsistent with the light, non-sweet taste of ranch water.

15

101. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

102. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which were (1) the presence of tequila that was "100% Agave," (2) the presence of Topo Chico mineral water, inextricably linked with ranch water and (3) the absence of added sugar ingredients because these are inconsistent with the light, non-sweet taste of ranch water.

103. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it (1) contained tequila because "100% Agave" refers to a type of tequila, (2) contained Topo Chico mineral water, because this is inextricably linked with ranch water and the Product is sold under the Topo Chico brand and (3) did not contain added sugar ingredients because these are inconsistent with the light, non-sweet taste of ranch water.

104. Defendant's representations affirmed and promised that the Product (1) contained tequila because "100% Agave" refers to a type of tequila, (2) contained Topo Chico mineral water, because this is inextricably linked with ranch water and the Product is sold under the Topo Chico brand and (3) did not contain added sugar ingredients because these are inconsistent with the light, non-sweet taste of ranch water.

105. Defendant described the Product so Plaintiff believed it (1) contained tequila because "100% Agave" refers to a type of tequila, (2) contained Topo Chico mineral water, because this is inextricably linked with ranch water and the Product is sold under the Topo Chico brand and (3) did not contain added sugar ingredients because these are inconsistent with the light, non-sweet

taste of ranch water, which became part of the basis of the bargain that it would conform to its affirmations and promises.

106. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

107. This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the Topo Chico brand of mineral water, the sparkling water component of ranch water since this drink was first created.

108. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

109. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

110. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, by consumers through online forums, and writers, at outlets like Paste Magazine.

111. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

112. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it (1) contained tequila because "100% Agave" refers to a type of tequila, (2) contained Topo Chico mineral water, because this is inextricably linked with ranch water and the Product is sold under the Topo Chico brand and (3) did not contain added sugar ingredients because these are inconsistent with the light, non-sweet taste of ranch water.

113. The Product was not merchantable because Defendant had reason to know the

17

particular purpose for which the Product was bought by Plaintiff, because he expected that it (1) contained tequila because "100% Agave" refers to a type of tequila, (2) contained Topo Chico mineral water, because this is inextricably linked with ranch water and the Product is sold under the Topo Chico brand and (3) did not contain added sugar ingredients because these are inconsistent with the light, non-sweet taste of ranch water, and he relied on its skill and judgment to select or furnish such a suitable product.

### Count IV

### Negligent Misrepresentation

114. Plaintiff incorporates by reference preceding paragraphs 1-61.

115. Defendant had a duty to truthfully represent the Product, which it breached.

116. This duty was non-delegable, based on Defendant's holding itself out as having special knowledge and experience in this area, custodian of the Topo Chico brand, most associated with ranch water.

117. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality and transparency the Topo Chico brand has been known for, especially when it comes to ranch water.

118. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

119. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

120. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

## Count V

## Fraud

121. Plaintiff incorporates by reference preceding paragraphs 1-61.

122. Defendant misrepresented and/or omitted the attributes and qualities of the Product, by using the term "100% Agave," which refers to a specific type of tequila, even though the agave it used was equivalent to added sugar, an ingredient not a part of ranch water.

123. Defendant was aware of consumer confusion about the terms "hard seltzer" and "spiked sparkling water" and how a significant percentage of the public believed these terms referred to alcoholic beverages which contained distilled spirits, which in this instance, meant tequila.

## Count VI

## Unjust Enrichment

124. Plaintiff incorporates by reference preceding paragraphs 1-61.

125. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Awarding monetary, statutory and/or punitive damages and interest;
4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated: May 15, 2023

          Respectfully submitted,

   /s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

**Pro Hac Vice* Application Forthcoming